UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DOUGLAS BURR,

and

REBBECCA BURR,
           Plaintiffs

v.

RODNEY BOUFFARD, individually in his former capacity as Warden of the Maine State Prison,

MATHEW A. MAGNUSSON, individually and In his official capacity as the Warden of the Maine State Prison

TROY ROSS, individually in his capacity as Deputy Warden of the Maine State Prison,

LYDIA BURNHAM, individually in her capacity as a Lieutenant at the Maine State Prison,

KENNETH VIGUE, individually in his capacity as a Captain of the Maine State Prison,

HAROLD ABBOTT, individually in his capacity as a Captain of the Maine State Prison,

DAVID ALLAN, individually in his capacity as Unit Manager at the Maine State Prison,

| Docket No. |
|---|
|  |

1

RANDY LIBERTY, in his official capacity as
successor Commissioner of the Maine Department
of Corrections

And

THE MAINE DEPARTMENT OF
CORRECTIONS

                Defendants

---

### COMPLAINT AND JURY TRIAL DEMAND
### INJUNCTIVE RELIEF SOUGHT
### FEDERAL QUESTION

---

1. The Plaintiff, Douglas Burr, is an individual incarcerated at the Maine State Prison, in the Town of Warren, County of Knox, State of Maine.

2. The Plaintiff, Rebecca Burr is an individual residing in the Town of Kennebunk, County of York, State of Maine.

3. The Defendant, Rodney Bouffard, is being sued in his individual capacity as the former Warden of the Maine State Prison, located in Warren, County of Knox, State of Maine.

4. The Defendant, Troy Ross is being sued in his individual capacity as the Deputy Warden of the Maine State Prison, located in Warren, County of Knox, State of Maine.

5. The Defendant, Mathew A. Magnusson is being sued individually and in his official capacity as the current Warden at the Maine State Prison, located in Warren, County of Knox, State of Maine.

6. The Defendant, Ken Vigue is being sued in his individual capacity as a Captain at the Maine State Prison, located in Warren, County of Knox, State of Maine.

7. The Defendant, Harold Abbott is being sued in his individual capacity as a Captain at the Maine State Prison, located in Warren, County of Knox, State of Maine.

8. The Defendant, David Allan is being sued in his official capacity as a Unit Manager at the Maine State Prison, located in Warren, County of Knox, State of Maine.

9. The Defendant, Lydia Burnham is being sued in her individual capacity as a Lieutenant at the Maine State Prison, located in Warren, County of Knox, State of Maine.

10. The Defendant, Randall Liberty is being sued in his official capacity as the Commissioner of the Maine Department of Corrections with oversight responsibility for the Maine State Prison, located in Warren, County of Knox, State of Maine.

11. The Defendant Maine Department of Corrections is a Department of the State of Maine, charged with the responsibility for the care and housing of individuals incarcerated by the State of Maine, operating under the authority of Title 34-A M.R.S.A. §1201 et.seq. and is located in the City of Augusta, County of Kennebec, State of Maine.

12. This action is brought pursuant to Title 42 USC Sec. 1983, et seq.

13. This Court has jurisdiction as the matter raises a federal question and jurisdiction is proper under Title 28 USC Sec. 1331.

14. This Court has jurisdiction over the state law claims as they arise out of a common nucleus of operative fact and as such the Court has ancillary and/or pendent jurisdiction over the state law claims.

15. The action is properly venued in Portland as the Plaintiff Rebecca Burr is a resident of York County.

COUNT I
DOUGLAS BURR
42 USC §1983

16. The Petitioner/Respondent repeats, reavers and re-alleges all allegations contained in Paragraphs one through ten of the complaint as if expressly stated herein.

17. On or about June 12, 2014, Deputy Warden Troy Ross directed that Douglas Burr be removed from the general population at the Maine State Prison and placed on Emergency Observation Status (EOS) in the Special Management Unit (SMU) at the Maine State Prison. The Special Management Unit is the euphemistic name for solitary confinement at the Maine State Prison.

3

18. Deputy Warden Ross' actions in removing Douglas Burr from the general population and placing him on Emergency Observation Status in the Special Management Unit did not meet any of the requirements of the Maine Department of Corrections Policies for doing so and was arbitrary and capricious, violating Douglas Burr's due process Rights.

19. On June 12, 2014 at 17:45 (5:45 pm) Corporal Mark Engstfield wrote a disciplinary report, at the request of Deputy Warden Ross, which led to Douglas Burr being placed in the Special Management Unit.

20. Pursuant to the Maine Department of Corrections Policy 20.1, Pg 3-25 #3 the disciplinary report has to be delivered to a shift supervisor within 72 hours. The same policy also provides that the time frame for the submission of the report begins when the behavior is observed or discovered.

21. Though the behavior which led to Corporal Engstfield's disciplinary report allegedly occurred on June 12, 2014, the Shift Supervisor, Captain Vigue, did not acknowledge the report until June 19, 2014 at 18:30 hours, more than 168 hours after the alleged behavior was observed or discovered.

22. Corporal Engstfield's failure to properly submit the June 12, 2014 disciplinary report which led to Douglas Burr being placed in the Special Management Unit within 72 hours of the alleged behavior violated Maine Department of Corrections Policy 20.1 and constitutes a violation of Douglas Burr's due process and equal protection rights under the United States and Maine State Constitutions.

23. Corporal Engstfield's June 12, 2014 disciplinary report identifieD Douglas Burr's Housing Unit as MSP/SMU/B Pod/B122/B.

24. Douglas Burr was not assigned to MSP/SMU/B Pod/B122/B until June 17, 2014, five days after Corporal Engstfield allegedly wrote his report.

25. Corporal Engstfield's June 12, 2014 disciplinary report describes the evidence upon which the report is based is a "Confidential Report." The date upon which Corporal Engstfield indicates that he secured the "Confidential Report" is June 19, 2014, the same date as the disciplinary report was acknowledged as received by Captain Ken Vigue.

26. Upon information and belief Corporal Engstfield did not complete a disciplinary report on June 12, 2014.

27. Upon information and belief Corporal Engstfield falsified information on the June 12, 2014 disciplinary report which led to Douglas Burr being placed in solitary confinement.

28. Corporal Engstfield's falsification of information on the June 12, 2014 disciplinary report violates Maine Department of Corrections Policy 20.1 and constitutes a violation of his procedural and substantive due process rights as well as his equal protection rights under the United States and Maine Constitutions.

29. Douglas Burr was not provided a copy of the paperwork placing him on Emergency Observation Status and he did not sign any paperwork placing him on Emergency Observation Status.

30. Maine Department of Corrections Policy 20.1 provides that all inmates who are placed on Emergency Observation Status should have notice of the reasons why they are placed on such status and are entitled to the paperwork which supports such placement.

31. The Maine Department of Corrections failure to provide Douglas Burr with the Emergency Observation Status paperwork as required by Maine Department of Corrections Policy 20.1 is a violation of Douglas Burr's due process rights.

32. The June 12, 2014 disciplinary report which led to Douglas Burr's being placed in solitary confinement was not investigated until eight (8) days after the alleged incident which is a direct violation of Maine Department of Corrections Policy 20.1 and Douglas Burr's due process rights.

33. On June 19, 2014 when he conducted his review of the report, Captain Kenneth Vigue failed to adhere to Maine Department of Corrections Policy 20.1 and dismiss the June 12, 2014 disciplinary report because the time frame for completing and submitting the report were not adhered to and Douglas Burr's statutory and constitutional rights were violated.

34. The Maine Department of Corrections scheduled a disciplinary hearing on the June 12, 2014 disciplinary report against Douglas Burr for July 8, 2014.  Douglas Burr did not receive a continuance form for the scheduled hearing date in direct violation of Maine Department of Corrections Policy 20.1 and his due process rights.

35. On July 14, 2014 the Maine Department of Corrections held a hearing on the June 12, 2014 disciplinary report against Douglas Burr.  The hearing was held 32 days after the incident report was written and is in direct violation of Maine Department of Corrections Policy 20.1 and violated Douglas Burr's due process rights.

36. At the July 14, 2014 hearing, upon information and belief, the Hearing Officer Unit Manager David Allan had not received the required training by the State of Maine Attorney General's Office as required by Maine Department of Corrections Policy 20.1 and was not qualified to preside over a disciplinary hearing.

37. The failure of the Maine Department of Corrections to provide a qualified hearing officer for Douglas Burr's July 14, 2014 disciplinary hearing tainted the proceedings and was a violation of his due process rights.

38. Captain Harold Abbott and Unit Manager David Allan refused to provide Douglas Burr an opportunity to review and contest the evidence against him as required by Maine Department of Corrections Policy 20.1 and violated his due process rights.

39. On July 14, 2014 Unit Manager David Allan Abbott found Douglas Burr guilty of a disciplinary infraction.

40. Douglas Burr filed a timely appeal of the July 14, 2014 decision finding him guilty of a disciplinary infraction.

41. On August 8, 2014 Deputy Warden Troy Ross denied Douglas Burr appeal of the July 14, 2014 decision and affirmed the recommended decision of the disciplinary officer.

42. Deputy Warden Ross had an impermissible conflict of interest. He was the individual who had directed that a disciplinary report be brought against Douglas Burr. It violates Maine Department of Corrections Policy 20.1 as well as any concept of due process, to allow a complainant to sit as the ultimate arbiter on the complaint which he directed be filed.

43. The Respondents, individually and jointly, continuously and systemically violated the policies and procedures of the Maine Department of Corrections and the due process rights of Douglas Burr.

44. The actions of the Respondents in violating the policies and procedures of the Maine Department of Corrections and in violating Douglas Burr's due process and equal protection rights were arbitrary and capricious, a clear abuse of the Department's discretions and not supported by the evidence.

45. On or about September 9, 2014, after exhausting all administrative remedies Douglas Burr filed an Administrative appeal under M.R.Civ.P. Rule 80C appealing the Departments finding and an action under 42 USC Sec. 1983 requesting the following injunctive relief:

> "WHEREFORE, Douglas Burr respectfully demands judgment against the Defendants and requests the Court Order the Defendants to cease and desist with the holding of Douglas Burr in the Special Management Unit, transfer Douglas Burr to the Maine Correctional Center, award Douglas Burr his attorney's fees incurred in bringing this action

       and such other and further relief as this Court deems
       just and proper."

46. In his September 9, 2014 complaint Douglas Burr filed a separate 42 USC §1983 count seeking damages against Corporal Mark Engstfield for falsifying the June 12, 2014 disciplinary report.

47. Maine Department of Corrections Policy 20.1 provides that the maximum amount of time that a prisoner could be held in solitary confinement for the disciplinary infraction with which Mr. Burr had been charged was 30 days.

48. On or about October 1, 2014, after Mr. Burr had been held in solitary confinement for a disciplinary infraction for approximately 108 days, the Attorney General's Office advised that the Department of Corrections had not met its burden and would be expunging the record of a disciplinary infraction against Mr. Burr, rescinding the fine imposed and restoring good time.

49. In October 2014 even though the Department of Corrections acknowledged they could not continue to hold Mr. Burr in solitary confinement on a disciplinary infraction, the Department of Corrections continued to hold Mr. Burr in solitary confinement as a "security risk."

50. In or around July of 2014 the Unit Supervisor for the segregation/solitary confinement unit at the Maine State Prison began recommending that Mr. Burr be released from the segregation/solitary confinement unit, each time he recommended Mr. Burr's release Deputy Warden Ross and Prison Administration overrode the recommendation.

51. In or around November of 2014 the Unit Supervisor for the segregation/solitary confinement unit at the Maine State Prison advised Prison Administration that he did not believe that Mr. Burr was a security risk and that he had completed all programming which was available in the segregation/solitary confinement unit.

52. In or around February 2016 Mr. Burr was advised by Lt. Lydia Burnham, an investigator for the security team at the Maine State Prison, that he would not be released from solitary confinement/ segregation until he admitted that he had committed the disciplinary infraction which the Department of Corrections admitted it could not prove.

53. On or about February 3, 2015 the Maine Department of Corrections, through the Maine Attorney General's Office advised the Maine Superior Court that pursuant to the Maine Department of Corrections policy, the Maine Department of Corrections could continue to hold Mr. Burr in solitary confinement/segregation indefinitely, up through the Mr. Burr's entire sentence of incarceration.

7

54. On or about July 14, 2017 the Maine Superior Court determined that the conditions under which Mr. Burr was being held constituted a "significant and atypical hardship" triggering 14th Amendment due process protections.

55. Mr. Burr's constitutional right to due process was a clearly established right and was one which Prison Administration was aware.

56. On or about September 27, 2019 the Maine Superior Court found that the Maine Department of Corrections had engaged in numerous due process violations concerning Mr. Burr, but held that Maine State Law prohibited the Court from imposing injunctive relief under Mr. Burr's Section 1983 Count in the case brought in the Maine Superior Court.

57. At the time Mr. Burr brought his action in the State Court he had no way of knowing that Prison Administration at the Maine State Prison would continue to hold him as a security risk indefinitely and would repeatedly violate his due process rights.

58. At all times relevant, the Defendants were acting in their official capacities under the color of State Law.

59. Warden Bouffard, Deputy Warden Ross, Captain Vigue, Captain Abbott, Unit Manager Allan and the Maine State Prison Administration's actions in placing Douglas Burr on Emergency Observation Status, placing him in solitary confinement in the Special Management Unit, failing to follow their own Department Policies and Procedures, holding him in solitary confinement for 19 months as a "security risk" and taking disciplinary action against Douglas Burr were arbitrary and capricious and violated Douglas Burr's federally protected rights.

60. As a direct and proximate result of the Respondents actions in violating the Maine Department of Corrections policies and procedures and in violating Douglas Burr's constitutional rights, Douglas Burr has been subjected to unwarranted punitive actions, including, without limitation, the loss of his medium custody level, living in the general population, contact visitation, good time, employment, and educational opportunities and has incurred significant attorneys fees in excess of $100,000 and has been subject to solitary confinement causing significant and severe emotional distress all without due process of law.

61. The Defendants' actions in denying Mr. his due process rights were in reckless disregard of those rights or were with actual malice and warrant the award of punitive damages.

8

WHEREFORE, the Plaintiff Doug Burr demands judgment against the Defendants in the amount of $500,000, plus interest, costs, attorneys fees, punitive damages and such other and further relief as this Court deems just and proper.

COUNT II
DOUGLAS BURR
RETALIATION CLAIM

62. The Plaintiff Douglas Burr repeats, reavers and re-alleges all allegations contained in Paragraphs one through sixty-one of this complaint as if expressly stated herein.

63. In or around December of 2019 Douglas Burr was engaged in a contact visit with his wife Rebecca Burr in the Prison Visitation Room.

64. Douglas Burr had just filed an appeal of the Maine Superior Court's decision to refuse to grant him injunctive relief under 42 USC Sec. 1983 in the prior lawsuit.

65. During the visit Prison Officials claimed that Douglas Burr gave his wife, Rebecca Burr something which she put in her mouth and immediately terminated the visit.

66. Prison Officials maintained that the episode was recorded on video and charged Mr. Burr with another disciplinary infraction.

67. Prison Administration banned Rebecca Burr from any visits with Doug Burr and ordered that all of Mr. Burr's visits be non-contact (through glass) visits.

68. Upon learning of the retaliation, Mr. Burr's counsel requested a visit and insisted upon and was promised a contact visit to discuss what had happened.

69. When Mr. Burr's Counsel arrived at the prison he was refused a contact visit and the Corrections Officer refused to call Administration to clarify the visit status.

70. Mr. Burr grieved the finding of a disciplinary infraction and Prison Administration again admitted that it could not prove the infraction.

71. Though the Prison Administration admitted it could not prove that Mr. Burr had committed a disciplinary infraction, it nonetheless continued to ban Rebecca Burr from the Maine State Prison, and requiring that all of Mr. Burr's visits remain non-contact visits, effectively imposing another form of solitary confinement.

72. As a direct and proximate result of the Defendant's actions in violating the Maine Department of Corrections policies and procedures and in violating Douglas Burr's constitutional rights, in retaliating against Douglas Burr for prevailing against the Department, Douglas Burr has been subjected to unwarranted punitive actions, and has been subject to significant and severe emotional distress all without due process of law.

73. The Defendants' actions in retaliating against Mr. Burr were in reckless disregard of those rights or were with actual malice and warrant the award of punitive damages.

WHEREFORE, the Plaintiff Doug Burr demands judgment against the Defendants in the amount of $500,000, plus interest, costs, attorneys fees, punitive damages and such other and further relief as this Court deems just and proper.

<u>COUNT III</u>
REBECCA BURR
42 USC §1983 -DEFAMATION

74. The Plaintiff Rebecca Burr repeats, reavers and re-alleges all allegations contained in Paragraphs one through seventy-three of this complaint as if expressly stated herein.

75. In June of 2014 Lydia Burnham advised Prison Administration that Rebecca Burr was dealing drugs and taking payments for drugs which Douglas Burr was trafficking in the Maine State Prison.

76. Lydia Burnham's statement concerning Rebecca Burr was false, slanderous and defamatory.

77. In December of 2016 Lydia Burnham advised Ms. Burr's employers that Ms. Burr had to be kept away from serving food to Lydia Burnham.

77. Maine Department of Corrections Policy 21.4 provides:

> "It is the policy of the Department of Corrections to permit prisoners to have visits with family, friends, and professional visitors under conditions that are consistent with safety, security, and orderly management of the facility."

78. Maine Department of Corrections policy creates a constitutionally protected interest in allowing family members to visit with prison inmates.

79. Rebecca Burr suffered injury to her reputation from Lydia Burnham's and Prison Administrations false statements, and (2) Rebecca Burr has also suffered a burden upon or an alteration of her status or rights.

80. As a direct and proximate result of the Defendants actions Rebecca Burr has been subjected to ridicule, harassment, unwarranted punitive actions, and has been subject to significant and severe emotional distress all without due process of law.

81. The Defendants' actions in defaming Ms. Burr were in reckless disregard of those rights or were with actual malice and warrant the award of punitive damages.

WHEREFORE, the Plaintiff Rebecca Burr demands judgment against the Defendants in the amount of $500,000, plus interest, costs, attorneys fees, punitive damages and such other and further relief as this Court deems just and proper.

COUNT IV
REBECCA BURR
42 USC §1983

82. The Plaintiff Rebecca Burr repeats, reavers and re-alleges all allegations contained in Paragraphs one through eighty-two of this complaint as if expressly stated herein.

83. Maine Department of Corrections Policy 21.4 provides:

> "It is the policy of the Department of Corrections to permit prisoners to have visits with family, friends, and professional visitors under conditions that are consistent with safety, security, and orderly management of the facility."

84. Maine Department of Corrections policy creates a constitutionally protected interest in allowing family members to visit with prison inmates.

85. Defendants actions in refusing to allow Rebecca Burr to visit Douglas Burr and a continuing ban on Rebecca Burr from any Department of Corrections facility after concluding that the Department could not prove a disciplinary action against Douglas Burr for alleged unproven events during a visit with Rebecca Burr were arbitrary and capricious and violated Rebecca Burr's federally protected rights.

86. As a direct and proximate result of the Defendants actions Rebecca Burr has been subjected to unwarranted punitive actions, and has been subject to significant and severe emotional distress all without due process of law.

87. The Defendants' actions in banning Ms. Burr from Department of Corrections facilities and refusing to allow her to visit her husband were in reckless disregard

11

of those rights or were with actual malice and warrant the award of punitive damages.

WHEREFORE, the Plaintiff Rebecca Burr demands judgment against the Defendants in the amount of $500,000, plus interest, costs, attorneys fees, punitive damages and such other and further relief as this Court deems just and proper.

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS OF THEIR COMPLAINT

DOUGLAS & REBECCA BURR
By their Attorney

Dated: 12 June 2020

/s/ *Eric M. Mehnert*
Eric M. Mehnert, Esq., Bar #3724
Hawkes & Mehnert, PC
21 College Heights
Orono, ME   04473
Tel. (207) 735-7127