## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DOUGLAS BURR and          )
REBECCA BURR,            )
                              )
         Plaintiffs,      )
                              )    **Civil No. 2:20-cv-00206-GZS**
        v.             )
                              )
RODNEY BOUFFARD, et al.,    )
                              )
         Defendants.

## DEFENDANTS' MOTION TO DISMISS COMPLAINT
## WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Rodney Bouffard, Matthew Magnusson, Troy Ross, Lydia Burnham, Kenneth Vigue, Harold Abbot, David Allen, Randall Liberty, and the Maine Department of Corrections (the "Department") move to dismiss Plaintiffs' Complaint. Dismissal is appropriate for two reasons. *First*, Count I is no more than an improper attempt by Plaintiffs to relitigate Mr. Burr's state court case. That effort is barred by both res judicata and, in effect, issue preclusion. *Second*, Counts II, III, and IV fail to state a claim for relief under Section 1983 because Plaintiffs do not have an unfettered constitutional right to visitation, and they have not alleged a plausible link between constitutional injury and (1) protected conduct, or (2) defamatory statements.

## MEMORANDUM OF LAW

### Alleged Facts[1]

The facts associated with Count I, in which Plaintiffs allege that Plaintiff Douglas Burr's due process rights were violated in connection with his detention in restrictive housing at the Maine

---

[1] The well-pleaded facts in Plaintiffs' Amended Complaint are taken as true for purposes of Defendants' motion. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018).

State Prison ("MSP"), were found by Maine Superior Court, Kennebec County, in the course of Mr. Burr's September 2014 state court lawsuit (*see* Ex. A (Findings and Order for Entry of Judgment, *Burr v. Bouffard*, No. AP-14-57 (Kennebec Cty. Sup. Ct. Sept. 24, 2019)) ("Trial Decision")). Defendants briefly summarize those facts, together with Plaintiffs' additional allegations, below.

### A. Plaintiff Douglas Burr's Detention in Restrictive Housing and State Court Litigation

Mr. Burr is incarcerated at the Maine State Prison, while Plaintiff Rebecca Burr, Mr. Burr's wife, resides in Kennebunk, Maine (Am. Compl. ¶¶ 1-2). On or about June 12, 2014, Douglas Burr was the subject of an MSP Inner Perimeter Security ("IPS") investigation into drug trafficking (*see id.* ¶¶ 17, 75; *see also* Trial Decision 4). As part of that investigation, Defendant IPS investigator Lydia Burnham advised MSP officials that she believed that Ms. Burr was facilitating drug trafficking (Am. Compl. ¶ 75; *see also* Trial Decision 4). Based on the IPS investigation and a disciplinary report drafted by nonparty Corporal Mark Engstfeld, Defendant Deputy Warden Troy Ross placed Mr. Burr on Emergency Observation Status ("EOS") in MSP's Special Management Unit ("SMU") (*id.* ¶ 19; *see also* Trial Decision at 4).

Plaintiffs contest the conclusion that Ms. Burnham drew, and they also assert that she advised Ms. Burr's employers—who are not identified in the Complaint—that Ms. Burr should not be permitted to serve food to Ms. Burnham (Am. Compl. ¶ 77). Ms. Burr maintains that as a result of Ms. Burnham's statements and those by unnamed "Prison Administrations," she suffered harm to her reputation, including "ridicule, harassment, unwarranted punitive actions, and . . . significant and severe emotional distress" (*id.* ¶¶ 80-81).

Plaintiffs also allege a myriad of violations of Department policies in connection with Mr. Burr's detention in restrictive housing. They maintain that Corporal Engstfeld's report was not

acknowledged by the shift supervisor, Defendant Captain Kenneth Vigue, until a week after its drafting (Am. Compl. ¶ 21); that the report identified as Mr. Burr's housing unit one to which Mr. Burr was not moved until five days later (*id*. ¶¶ 23-24); that Mr. Burr was not provided a copy—and did not sign—paperwork which memorialized his placement in the SMU (*id*. ¶ 29); that Corporal Engstfeld's report was not investigated until eight days after the incident described therein (*id*. ¶ 32); that Mr. Burr was not provided a hearing continuance form (*id*. ¶ 34); that Mr. Burr's disciplinary hearing was held 32 days after Corporal Engstfeld wrote the incident report (*id*. ¶ 35); that the hearing officer, Defendant Captain David Allen, was improperly trained (*id*. ¶ 36); that the hearing officer did not provide Mr. Burr a sufficient opportunity to review and contest the evidence against him (*id*. ¶ 38); and that Deputy Warden Ross had a conflict of interest when deciding Mr. Burr's appeal (*id*. ¶¶ 41-42). Plaintiffs contend that these infractions constitute violations of Mr. Burr's due process rights (*id*. ¶¶ 59-61).

On July 14, 2014, following a hearing, Mr. Burr was adjudged guilty of trafficking (*see* Am. Compl. ¶ 39; Trial Decision 5). Deputy Warden Ross denied Mr. Burr's appeal of that decision a few weeks later (*id*. ¶ 41). Ultimately, Burr spent 22 months in restrictive housing (Trial Decision 3), which Plaintiffs allege resulted from Deputy Warden Ross overriding recommendations that Mr. Burr be released to the general population, and a requirement that Mr. Burr admit the trafficking violation (Am. Compl. ¶¶ 50-52; Trial Decision 5-7).

On September 9, 2014, Mr. Burr filed an action in Maine Superior Court, Kennebec County, in which he (1) challenged the Department's disciplinary decision under Maine Rule of Civil Procedure 80(C), and (2) sought relief from the Department, as well as Defendants Bouffard, Ross, Vigue, Abbott, and Allen, under 42 U.S.C. § 1983 for alleged due process violations (Am. Compl. ¶¶ 45-46; *see also* Ex. B (Pet. For Rule 80(C) Review and Compl. for Injunctive Relief,

*Burr v. Bouffard* (Sept. 9, 2014)) ("State Court Complaint")). With the exception of a separate claim that Mr. Burr levied against Corporal Engstfeld (Am. Compl. ¶ 46), Mr. Burr did not seek damages (*see* State Court Complaint 6-8).

Prior to trial, and without objection from the Department, the Maine Superior Court ruled for Mr. Burr on his Rule 80C claim, vacating the discipline and awarding good time that Plaintiff lost or was otherwise unable to earn, due to the Department's failure to comply with certain procedural requirements (*see* Ex. C (Order on M.R. Civ. P. 80C Appeal and Cross Mots. for Summ. J., *Burr v. Bouffard* (Jan. 26, 2017) ("Summary Judgment Decision") 11). The Court also granted summary judgment on Mr. Burr's Section 1983 claim against Corporal Engstfeld, concluding that no reasonable juror could find that his conduct played a part in Mr. Burr's lengthy detention in restrictive housing (*see id.* at 13).

Thereafter, following a two-day bench trial on the remaining Section 1983 claim, the Superior Court ruled that while the lack of meaningful review of Mr. Burr's placement in restrictive housing violated his due process rights, the court could not, on the record before it, order the extraordinary injunctive relief that Mr. Burr sought in connection with his Section 1983 claim (*see* Trial Decision 13-14, 16-18). The court therefore entered judgment for Defendants on that claim (*see id.* at 18).

On appeal, the Law Court vacated the Superior Court's decision and remanded the matter for further proceedings. Specifically, the Law Court (1) directed the Superior Court to enter judgment for Mr. Burr, reasoning that the Superior Court could only have awarded the good time that Mr. Burr was prevented from earning during non-disciplinary segregation under Section 1983, rather than under Rule 80C; and (2) remanded the case for the Superior Court to consider whether injunctive relief is warranted, given the Superior Court's original decision incorrectly suggested

that it lacked *any* authority to provide such relief under Maine law (Ex. D (*Burr v. Dep't of Corrs*., 2020 ME 130 (Nov. 5, 2020)) ("Law Court Decision") 1-2). As of the date of this Motion, no further action has been taken by the Superior Court.

### B. Plaintiffs' Allegations of Subsequent Misconduct

Under Department Policy 21.4, Prisoner Visitation,[2] every correctional facility must "establish a visitation program to afford prisoners with reasonable opportunities to visit with family and friends . . . , in accordance with Department policy and written facility specific practices. *Id.* Procedure A(1) (Aug. 1, 2018). Each must also adopt "visitation rules," including rules to "prevent visitors and prisoners from giving or receiving any items or written communications during visits." *Id.* Procedure A(2), (9). A prisoner may be "prohibited from receiving visits from any other person" where there is "reasonable suspicion" that (1) the visit would "facilitate criminal activity or violation of facility rules or would create a risk to safety, security, or orderly management of the facility," or (2) "the prisoner or other person has violated or will violate the visit rules." *Id.* Procedure F(2)(l)-(m). Visit privileges—including contact visits—may likewise be suspended or restricted for "safety, security, or orderly management" of the facility. *Id.* Procedure G(4); *id.* Procedure M(2).

In December 2019—after Mr. Burr's release from restrictive housing—Ms. Burr visited Mr. Burr in MSP's visitation room (Am. Compl. ¶ 63; *see also* Ex. E (Ltr. From Warden Magnusson to Rebecca Burr (Dec. 27, 2019) ("Visitation Letter")).[3] MSP officials observed Mr.

---

[2]     Current     Maine     Department     of     Corrections     policies     are     published     at https://www.maine.gov/corrections/about/policies-procedures-proposed-rules.

[3] The restriction on Plaintiffs' visitation privileges is explicitly referenced in the Complaint (*see* Am. Compl. ¶ 71), and therefore may be considered, *see Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it  when deciding am otion to discmiss under Rule 12(b)(6)." ).

Burr give something to Ms. Burr during that visit that she put in her mouth (Am. Compl. ¶ 65). After reviewing video footage, and pursuant to Policy 21.4, Defendant Warden Matthew Magnusson barred Ms. Burr from visiting MSP, and restricted Mr. Burr to non-contact visits (*id.* ¶¶ 66-67; *see also* Visitation Letter).

Plaintiffs allege that MSP officials found Mr. Burr not guilty of a disciplinary infraction which they admitted they could not prove, but still refused to rescind the visitation restrictions (Am. Compl. ¶¶ 70-71, 86). Ms. Burr also contends that she has been "subjected to unwarranted punitive actions" and suffered "significant and severe emotional distress" as a result (*id.* ¶ 87).

### Applicable Legal Standards

When adjudicating a Rule 12(b)(6) motion to dismiss, the Court "take[s] the complaint's well-pleaded facts as true" and "draw[s] all reasonable inferences in the plaintiffs' favor." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23-24 (1st Cir. 2015).

At the motion-to-dismiss stage, the Court may consider "documents the authenticity of which are not disputed by the parties, official public records, "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 209); *accord Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Such documents "ordinarily include '[those] from prior state court adjudications.'" *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (quoting *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000)). Rule 12(b)(6) motions likewise may be premised on the

"inevitable success of an affirmative defense" where the facts establishing the defense are "definitively ascertainable from the complaint and the other allowable sources of information," and "those facts suffice to establish the affirmative defense with certitude." *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (internal quotation marks omitted)).

**Argument**

**I.     Plaintiff Have Not Stated a Claim against the Maine Department of Corrections or Randall Liberty Because They Are Not "Persons" Under Section 1983**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983. The Supreme Court has held that a state is not a "person" within the meaning of Section 1983 and therefore is not subject to liability under that statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). The same reasoning applies to state agencies and officials of those agencies sued in their official capacities. *Id.* at 71; *accord Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003).

Under this clear precedent, the Department is not a "person" subject to a damages suit under Section 1983. *See Tower v. Leslie-Brown*, 167 F. Supp. 2d 399, 402 (D. Me. 2001) (dismissing Section 1983 damages claims against the Maine State Police). Defendant Commissioner Randall Liberty, because he is sued only in his official capacity, is also not a "person" who can be held liable under Section 1983. *Wilson v. Brown*, 889 F.2d 1195, 1197 (1st Cir. 1989) (affirming dismissal of Section 1983 damages claim against prison warden sued in his official capacity). Plaintiffs' claims against both Defendants should accordingly be dismissed.

## II.   Plaintiffs Have Failed to State a Due Process Claim (Count I)

Plaintiffs' due process claim, which they allege only on behalf of Mr. Burr, is an attempt to relitigate the Section 1983 claim that went to trial in Mr. Burr's state court case. The only difference here is that rather than seeking injunctive relief from official capacity Defendants, Plaintiffs have packaged identical allegations in support of an individual capacity claim for damages. This change in framing does not alter the applicability of well-established doctrines of issue- and claim-preclusion, such that Plaintiffs' due process claim should be dismissed.

### A.  Mr. Burr already litigated Count I in state court, and it is therefore barred by claim preclusion.

"[A] final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995). When considering the preclusive effect of a state court decision, federal courts apply the forum state's law of claim preclusion (res judicata). *See Cruz v. Melecio*, 204 F.3d 14, 18 (1st Cir. 2000). Under Maine law, as under federal law, res judicata requires (1) a final judgment on the merits in an earlier proceeding; (2) that the matter at issue in the present action was litigated—or capable of being litigated—in the first action; and (3) that the same—or closely related—parties participated in both actions. *Hatch v. Trail King Indus.*, 699 F.3d 38, 45 (1st Cir. 2012); *Wilmington Trust Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371. Notably, a claim may be precluded even where the second lawsuit relies on a legal theory not advanced in the first case; seeks different relief than that sought in the first case; or involves evidence different from that which was relevant to the first case. *Sebra v. Wentworth*, 2010 ME 21, ¶ 12, 990 A.2d 538.

Each of these elements is present here. *First*, Plaintiff cannot reasonably contest that there was—or soon will be—final judgment in the earlier proceeding. The Superior Court granted

judgment on the merits to Defendants on Mr. Burr's Section 1983 claim following a two-day bench

trial (Trial Decision 17-18). While the Law Court vacated and directed that judgment be entered

in Mr. Burr's favor on that claim, that will be done as a matter of course, and almost certainly

before this Court takes action on Defendants' Motion.[4]

Second, as to identicality of issues, the similarity between Count I and Mr. Burr's state

court Section 1983 claim is plain. Maine Law utilizes a "transactional test" to assess identicality,

which "examin[es] the aggregate of connected operative facts" to determine if the claim "arose

out of the same nucleus of operative facts, and sought redress for essentially the same basic

wrong." Sebra, 2010 ME 21, ¶ 12 (quoting Portland Water Dist. v. Town of Standish, 2008 ME

23, ¶ 8, 940 A.2d 1097, 1100). In Mr. Burr's September 2014 Complaint, he alleged that multiple

violations of the Department's restrictive housing policies—and his lengthy stay in segregation—

collectively violated his due process rights. Here, Plaintiffs assert what is functionally the same

claim. In fact, the lion's share of Count I consists of allegations lifted verbatim from Mr. Burr's

state court complaint (compare Am. Compl. ¶¶ 17-44, 59 with State Court Compl. ¶¶ 12-40),

paired with subsequent procedural history and assertions of malfeasance that Mr. Burr has already

raised in state court (see Am. Compl. ¶¶ 45-57).[5] Count I and Mr. Burr's state court Section 1983

claim are accordingly identical for claim preclusion purposes.

Third, there is sufficient identity of the parties. In deciding whether there is sufficient

"commonality of interest," "substance over form controls the inquiry." NE Harbor Golf Club, Inc.

---

[4] All that remains at issue in the state court case is (1) whether injunctive relief will be ordered, and (2) whether, and to what extent, an award of attorney's fees is warranted.

[5] The fact that Plaintiff now seeks damages, rather than injunctive relief, has no bearing on the res judicata calculus. Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 57 (1st Cir. 2004) ("[W]e are unware of … any cognizable precedent holding that the type of relief sought in any way factors into the res judicata formula."); accord Roy v. City of Augusta, 712 F.2d 1517, 1521 (1st Cir. 1983).

*v. Town of Mount Desert*, 618 A.2d 225, 227 (Me. 1992). Plaintiffs cannot evade the preclusive effect of Mr. Burr's state court case by suing Defendants in their individual capacities.

While the general rule is that individuals sued in their individual capacities are not sufficiently related to those same individuals sued in their official capacities for claim preclusion to apply, *see Goldstein v. Gavin*, 719 F.3d 16, 23 (1st Cir. 2013), an agency official sued for actions taken in the scope of employment is "sufficiently closely related" to the agency itself. *Silva v. City of New Bedford*, 660 F.3d 76, 80 (1st Cir. 2011) (concluding suit against city barred by prior judgment against individual officers); *see also Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir. 2008) (acknowledging that claim preclusion applies "when a government is sued first (unsuccessfully) and officers in their personal capacities [are] sued afterwards on the same theory"). The Department and its employees—sued in their official capacities—were parties defending official acts in the state court case, such that Plaintiffs cannot sue the same officials— now in their individual capacities—for the same acts here. *See Estate v. Treworgy v. Comm'r, Dep't of Health & Human Servs.*, 2017 ME 179, ¶¶ 17-18, 169 A.3d 416 (affirming that plaintiffs' claims against Department employees arising from official conduct were precluded by prior judgment in Commissioner's favor); *Brown v. Osier*, 628 A.2d 125, 129 (Me. 1993) (finding school supervisory officials to be in privity with their school where the complaint sought redress for official acts, noting that the plaintiff could not "be permitted to circumvent the sound principles of *res judicata* merely by including the word 'individually' in his complaint").

In short, Plaintiffs' due process claim is an improper attempt to seek further relief through a claim that has already been litigated in state court. Count I should therefore be dismissed.

### B. Even if claim preclusion does not bar Claim I, Plaintiffs have still failed to state a claim by operation of issue preclusion.

    1. Plaintiffs are limited to the due process violation found by the state court.

The doctrine of issue preclusion (collateral estoppel) "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 17, 989 A.2d 733; *see also Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90 (1st Cir. 2007). The doctrine applies to both factual and legal issues. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994). Here, the issue of whether, and to what extent, Mr. Burr's due process rights were violated during his time in restrictive housing is a settled issue and cannot be relitigated.

As described above, there is no question as to identicality of the issues; that they were litigated by Mr. Burr; and that there is—or will be shortly as a matter of course—a valid and binding final judgment. Indeed, after evaluating the evidence concerning the due process violations that Mr. Burr alleged, the state court drew the following preclusive conclusions: (1) Department staff had failed to adhere to Department policies (Summary Judgment Decision 11); (2) Corporal Engstfeld's conduct—including his report—did not play a substantial role "in the deprivation of Mr. Burr's alleged liberty interest" (*id.* at 13); and (3) Mr. Burr's "due process rights were violated in that the process of reviewing his segregation status was not meaningful as required by law" (Trial Decision 13). While two of these rulings were clearly in Mr. Burr's favor, equally important is that, despite the plethora of allegations that Mr. Burr levied in state court—the same allegations that he makes here—the court identified only a single, albeit important, due process violation: a lack of meaningful review of his segregation status. Plaintiffs are therefore limited to arguments based on that due process violation and are precluded from arguing that Corporal Engstfeld's

conduct is causally linked to any due process violation, or that *other* parts of Mr. Burr's segregation or the disciplinary process constitute separate, additional infringements of his due process rights.

   2.   Plaintiffs have failed to allege a causal link between the conduct of the individual Defendants and the due process violation found by the state court.

Plaintiffs have failed to allege a causal connection between the lack of meaningful review identified by the state court and the actions of any of the individual-capacity Defendants sued in connection with their due process claim. Claim I should therefore be dismissed.

Beginning with former Warden Bouffard, the Complaint is completely devoid of allegations against him. Absent an affirmative link between his actions (or inactions) as a supervisor and the constitutional violation at issue, Plaintiffs' claim against him cannot proceed. *See Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009).

As to Captain Vigue, Plaintiffs barely allege anything more. Their sole allegation is that he acknowledged receipt of Corporal Engstfeld's disciplinary report seven days after the date of the disciplinary report (Am. Compl. ¶ 21). Plaintiffs have not contended that this acknowledgement was inaccurate, nor have they identified any connection between Captain Vigue's actions and the lack of meaningful review identified by the state court.

With respect to Captain Abbott, Plaintiffs allege that (1) he "refused to provide [Mr.] Burr an opportunity to review and contest the evidence against him" during his disciplinary hearing, and (2) he found Mr. Burr guilty of trafficking (Am. Compl. ¶¶ 38-39, 70). But as Plaintiffs appear to recognize elsewhere in the Complaint, it was Captain Allen, and not Captain Abbott, who presided over Mr. Burr's hearing (*see id.* ¶¶ 36; *see also* Summary Judgment Decision 6). Captain Abbott therefore could not have prevented Mr. Burr from reviewing evidence, nor did he play any role in adjudging his guilt.

As to Captain Allen, while he did conduct Mr. Burr's hearing, the state court did not conclude that the disciplinary hearing *itself* violated Mr. Burr's due process rights. Instead, it vacated the disciplinary decision at issue for failure to follow policy under Maine Rule of Civil Procedure 80(C). The court then concluded, after trial, that the subsequent process for reviewing Mr. Burr's segregation status was "not meaningful as required by law" (*see* Trial Order 14 (explaining that Mr. Burr was not made aware of what he "had to do to leave the highly restrictive confinement imposed on him")). Thus, Captain Allen played no role in the due process violation that the state court identified.

Finally, as to Deputy Warden Ross, Plaintiffs maintain that he (1) initially directed that Mr. Burr be removed from the general population at MSP (Am. Compl. ¶ 17); (2) directed Corporal Engstfeld to write the disciplinary report which led to that placement (*id.* ¶ 19); (3) denied Mr. Burr's appeal while harboring a conflict of interest (*id.* ¶¶ 41-42); and (4) overrode, along with unnamed other officials, recommendations from the Unit Supervisor that Mr. Burr be released from restrictive housing (*id.* ¶ 50).

Once again, none of these allegations establish that Deputy Warden Ross is responsible for the due process violation identified in state court. The first, second, and third allegations—as above and as the state court found with respect to Corporal Engstfeld (Summary Judgement Decision 13)—are isolated to circumstances disconnected from Mr. Burr's extended detention in restrictive housing. That said, nothing in Department Policy 20.1 forbid Deputy Warden Ross from adjudicating Mr. Burr's appeal, nor is there any reason to believe that there was a conflict of interest given it was not Deputy Warden Ross who investigated, witnessed, or brought the disciplinary complaint against Mr. Burr (*see generally* Ex. F (Department Policy 20.1, Prisoner Discipline (Apr. 15, 2013)). *See also Machiavelli v. Abbott*, 1:15-cv-00340-JDL, 2015 WL

8601352, at *3 n.6 (D. Me. Sept. 16, 2015) ("To the extent Plaintiff's claim against any defendant is based on the failure to sustain Plaintiff's administrative appeal, such conduct is not actionable as a due process violation.").

With respect to the fourth allegation, Deputy Warden Ross was not the architect of the review process provided to Mr. Burr. Rather, Deputy Warden Ross rejected transfer recommendations consistent with his authority under Department policy (*see* Ex. G (Policy 15.1, Emergency Observation Status and Administrative Segregation Status (June 28, 2013), Procedure C.) There is therefore no basis for holding him individually liable, even though a constitutional violation resulted. *See Mutty v. Anderson*, No. CV-08-178-B-W, 2009 WL 578550, at *6 (D. Me. Mar. 4, 2009) (finding no due process violation where the defendant "followed policy and procedure and was not acting unilaterally to interfere with [the plaintiff's] due process rights").

### III.   Plaintiffs' Remaining Counts Fail to State a Claim Upon Which Relief Can Be Granted

Each of Plaintiffs' remaining counts—one each for the visitation restriction on Ms. Burr (Count IV), retaliation against Mr. Burr (Count II), and defamation against Ms. Burr (Count III)—hinge upon alleged constitutional violations which post-date Mr. Burr's state court case. Still, none set forth an actionable claim.

#### A.  Plaintiffs do not have an unfettered constitutional right to visitation.

The due process clause "does not independently guarantee an inmate any visitation rights." *Furrow v. Magnusson*, No. 91-1585, 960 F.2d 143, 1992 WL 73154, at *1 (1st Cir. Apr. 10, 1992) (unpublished) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *see also Riley v. O'Brien*¸ No. CV 16-11064-LTS, 2016 WL 8679258, at *10 (D. Mass. Sept. 2, 2016) ("[T]he denial of prison access to a particular visitor is something that is ordinarily contemplated by a prison sentence, . . . and therefore is not independently protected by the Due Process Clause."

(citation omitted)). Rather, a prisoner's right of association and to maintain familial relationships is limited, *Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), and may be subject to restrictions that serve "legitimate penological interest[s]," *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Overton*, 539 U.S. at 132, 136; *Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004) (no constitutional violation where officials "refus[ed] to allow visits between a convicted sex offender who refused to comply with the requirements of the treatment program and his child").

More specifically, Plaintiffs have "not set forth any basis for the notion that [Maine] has created a liberty interest in unfettered visitation or that the defendants did not have discretion in limiting contact visitation." *Riley*, 2016 WL 8679258, at *10. Plaintiffs broadly cite Department Policy 21.4's preamble, but nowhere does that policy create an unfettered, protected interest in visitation. *See Furrow*, 1992 WL 73154, at *1. To the contrary, it sets limits on the scope of visitation, and vests discretion in Department officials to impose further restrictions. *See generally* Policy 21.4, Prisoner Visitation (Aug. 1, 2018) (establishing visitation rules); *see also, e.g., id.* Procedure F ("Prohibited Visitors"), Procedure M ("Suspension and Restriction of Visit Privileges"). Indeed, the preamble itself recognizes visits are only permitted "under conditions that are consistent with safety, security, and orderly management of the facility." *Id.* There is accordingly no constitutionally-protected interest in visitation that has been infringed.

The visitation restriction that MSP—specifically, Defendant Magnusson—imposed here was also well-justified. Defendant Magnusson barred Ms. Burr from visits after Mr. Burr passed an item to her that she placed in her mouth (*see* Am. Compl. ¶ 65; Visitation Letter). That is a sufficient reason for restricting visitation rights under Department policy, *see* Policy 21.4, Procedure L(4) (permitting visit termination for "behavior which is inappropriate or a violation of the facility rules, criminal in nature, or a risk to safety, security, or orderly management of the

facility or fails to follow facility visitation rules or the instructions of staff"); *id.* Procedure M(1)-(3) (permitting suspension of visitation after visit is terminated "due to the behavior of the prisoner or visitor," and permitting visitation suspension or restriction for "any . . . reason of safety, security, or orderly management"), and it is plainly tied to legitimate penological interests, *see Turner*, 482 U.S. at 89; *see also Furrow*, 960 F.2d at *1 (approving visitation restriction for violation of prison rules); *accord Riley*, 2016 WL 8679258, at *10.

Plaintiffs do not deny the truth of the Department's account, characterizing it only as pertaining to "unproven events" associated with disciplinary infractions for which Mr. Burr was found not guilty (Am. Compl. ¶ 86; *see also id.* ¶¶ 65-67, 70-71).[6] But the two are distinct: visitation restrictions require only "reasonable suspicion," *see, e.g.,* Policy 21.4, Procedure F(l)-(m); *id.* Procedure M(2)-(3), and the Department's discipline policy plainly recognizes that "a finding of not guilty does not preclude" a visitation restriction, Policy 20.1, Prisoner Discipline (Nov. 6, 2019), Procedure G(13). The visitation restriction at issue was therefore adequately supported, and it was not forbidden by the outcome of Mr. Burr's disciplinary hearing.

### B. Plaintiffs have not alleged a plausible retaliation claim.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A claim for First Amendment retaliation requires (1) protected First Amendment conduct; (2) adverse action by prison officials; and (3) a causal link between the protected conduct and the adverse action—i.e., the protected conduct must be a substantial or motivating factor. *LaFauci v.*

---

[6] Even if Plaintiffs had a protected interest in visitation, a suspension of visitation privileges is not unconstitutional under clearly established law. *See Cremeans v. Wrenn*, No. 17-CV-572-SM, 2019 WL 1406563, at *4-5 (D.N.H. Mar. 28, 2019) (collecting cases, and concluding that six-month restriction on visitation did not violate clearly-established law); *see also Williams v. Ozmint*, 716 F.3d 801, 807-08 (4th Cir. 2013) (complete suspension of visitation privileges for two years did not violate any clearly established constitutional right). Defendants would accordingly, on the face of the record, be entitled to qualified immunity for any visitation-related constitutional violation.

*Wrenn*, No. CIV. 09-CV-454-PB, 2010 WL 2583373, at *4 (D.N.H. June 21, 2010), *report and recommendation approved sub nom. LaFauci v. NH State Prison*, 2010 WL 2816333 (D.N.H. July 14, 2010); *accord Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004). For conduct to be considered "adverse," it must deter "a person of ordinary firmness" from engaging in the protected conduct. *Starr v. Dube*, 334 F. App'x 341, 342-43 (1st Cir. 2009) (internal quotation marks omitted); *accord Price v. Wall*, 464 F. Supp. 2d 90, 97 (D.R.I. 2006) (citing *Bart v. Telford*, 677 F.3d 622, 625 (7th Cir. 1982)).

Here, Plaintiffs' claim that the Department—specifically Warden Magnusson, the only Defendant implicated by Plaintiffs' retaliation allegations—restricted their visitation privileges because Mr. Burr was litigating his state court case fails on three fronts. *First*, Plaintiffs have failed to allege a sufficient causal link to retaliatory conduct. In apparent recognition of the fact that Mr. Burr's state court lawsuit had been pending for too long to itself warrant an inference of retaliation, they instead seek to tie the alleged retaliation to Mr. Burr's filing of an appeal in that same case (Am. Compl. ¶ 64).[7] Yet the mere fact of Mr. Burr's appeal, an expected and regular part of litigation, is not a plausible impetus for retaliation here because Plaintiff does not even allege that MSP officials were aware of the appeal at the time of the alleged retaliation. *See Alvarado v. Donahue*, 687 F.3d 453, 459 (1st Cir. 2012) ("[I]f a supervisor or other employee is unaware of the fact that a plaintiff engaged in protected conduct, any actions attributable to him could not plausibly have been inducted by retaliatory motives."). In fact, Mr. Burr's notice of appeal is dated December 20, 2019 (*see* Ex. H (Notice of Appeal, *Burr v. Bouffard*)), the day before the visit in

---

[7] With respect to Mr. Burr's allegation that his attorney was refused a contact visit (Am. Compl. ¶ 69), an apparent miscommunication resulted in MSP not offering the contact visit it should have, a circumstance for which both MSP's Warden and the Department's Deputy Commissioner have apologized to Plaintiffs' counsel.

question,[8] and on the day of the visit—well before the Attorney General's Office could even inform the Department of the appeal—Plaintiffs maintain that MSP officials had already "claimed that Douglas Burr gave his wife . . . something which she allegedly put in her mouth" (Am. Compl. ¶ 65).

*Second*, Defendants' actions were not "adverse". Given Mr. Burr had already filed his lawsuit and litigated it through trial at the time of the alleged retaliation, it is not reasonable to believe that a visitation restriction would "deter a person of ordinary firmness" from continuing to litigate that same case via an appeal. Indeed, given Mr. Burr's litigation history, the fact that Plaintiffs filed *this* lawsuit suggests just the opposite. *See Starr v. Moore*, 849 F. Supp. 2d 205, 208-09 (D.N.H. 2012) (recognizing relevance of the plaintiff's post-retaliation filing of grievances and lawsuits to determining whether conduct was adverse).

*Third*, Defendants articulated a clear, legitimate, and non-retaliatory explanation for the visitation restriction. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). As noted above, MSP officials witnessed Plaintiffs violate visitation rules when Mr. Burr passed Ms. Burr an item which she placed in her mouth, such that a visitation restriction was authorized under Department policy. *See, e.g.,* Policy 21.4, Procedure A(2). Plaintiffs do not contend that such conduct was permissible, and even crediting Plaintiffs' claims regarding the Department's ability to "prove" the violation, only reasonable suspicion was necessary to justify the restriction imposed, which was evident here. *See id.*, Procedure F(l)-(m). Warden Magnusson's actions therefore were not retaliatory. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) ("If the discipline which a prisoner claims is retaliatory was in fact imposed for an actual violation of prison rules or

---

[8] While Plaintiffs do not allege the exact date of the visit (*see* Am. Compl. ¶ 63), they maintain that Mr. Burr had "just filed an appeal" at the time of the visit (*id.* ¶ 64), and MSP records indicate that the visit occurred on December 21.

regulations, the prisoner's claim must fail."); *Brown v. Magnusson*, No. CV-07-61-B-W, 2008 WL 4657810, at \*18-\*19 (D. Me. Oct. 17, 2008) (granting summary judgment where the plaintiff failed to demonstrate why his transfer was not motivated by legitimate institutional concerns).

    **C. Plaintiffs have not adequately alleged a Section 1983 defamation claim because the conduct they identified neither plausibly harmed Ms. Burr's reputation nor burdened her constitutional rights.**

    Defamation alone does not state a cause of action under Section 1983. *See Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102-03 (1st Cir. 2002) ("It is beyond cavil that defamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights." (internal quotation marks omitted)); *accord Paul v. Davis*, 424 U.S. 693, 701 (1986). Rather, to be actionable under Section 1983, alleged defamation must fit into the "narrow category of situations that involve more than simple stigmatization," *Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998), and instead include a separate deprivation of a protected liberty interest "directly attributable to the challenged governmental action"—a "stigma plus" claim, *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011); *accord Temple v. Inhabitants of the City of Belfast*, 30 F. Supp. 2d 60, 66 (D. Me. 1998).

    Here, Plaintiffs have not articulated any constitutionally significant injury to Ms. Burr occasioned by Ms. Burnham's statements "advis[ing] Prison Administration" that "she believed" Ms. Burr was "dealing drugs and taking payments for drugs which Douglas Burr was trafficking," and "advis[ing] Ms. Burr's employers that Ms. Burr had to be kept away from serving food to [her]" (Am. Compl. ¶¶ 75, 77).[9] As set forth above, Ms. Burr does not have an unfettered right to visitation, the sole non-reputational harm that Plaintiffs identify. Further, even if Ms. Burr did have such a right, the visitation restriction was justified for reasons unrelated to Ms. Burnham's

---

[9] Plaintiffs do not specify the identity of the "Prison Administrations" that also allegedly made statements which are not identified in the Complaint (Am. Compl. ¶ 80).

statement, and was imposed years after those statements were made, such that there is no plausible connection between the purported defamation and any impact on Ms. Burr's visitation privileges. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *cf. URI*, 631 F.3d at 10 ("Where the stigma and the incremental harm . . . derive from distinct sources, a party cannot make out a viable procedural due process claim, even if both sources are government entities.").

Nor have Plaintiffs plausibly alleged that the statements at issue caused reputational harm. Ms. Burnham made the investigative statements at issue not in a public forum, but rather internally as a necessary part of a confidential drug trafficking investigation. *See Doe v. Bd. of Osteopathic Licensure*, Ken-20-32, 2020 ME 134, ¶ 18, —A.3d— (recognizing that confidential proceedings do not cause reputational harm); c*f. Cyr v. Hannaford Bros Co.¸* No. 2:17-cv-00321-GZS, 2019 WL 1140180, at *10 (D. Me. Mar. 12, 2019) (investigatory communications are not actionable defamation). Similarly, it is not clear how Ms. Burnham's instruction that Ms. Burr not serve her food—without any alleged explanation as to why—characterized or reflected poorly on Ms. Burr in any way. Plaintiffs' conclusory allegations regarding reputational damage are accordingly insufficient to state a viable Section 1983 claim. *See Miley v. Housing Auth. of City of Bridgeport,* 926 F. Supp. 2d 420, 432 (D. Ct. 2013) (collecting cases and concluding that "[c]ourts have routinely held that merely conclusory allegations that Plaintiff was stigmatized [or] that her reputation was substantially damaged . . . are insufficient without factual support to allege a plausible stigma-plus claim" (internal quotation marks omitted)).

### Conclusion

For the aforementioned reasons, Plaintiffs' Amended Complaint should be dismissed, and judgment should be entered for the Defendants.

Dated:  November 20, 2020                    Respectfully submitted,


                                             AARON M. FREY
                                             Attorney General

                                             /s/ Jason Anton
                                             Jason Anton
                                             Assistant Attorney General
                                             6 State House Station
                                             Augusta, ME  04333-0006
                                             Tel: (207) 626-8800

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated above, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to the Plaintiff in this matter.

<u>/s/ Jason Anton</u>