UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DOUGLAS BURR, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:20-cv-00206-GZS |
| | ) | |
| RODNEY BOUFFARD, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION
ON DEFENDANTS' MOTION TO DISMISS**

Douglas Burr, an inmate at the Maine State Prison, and his wife, Rebbecca Burr,[1]
assert claims pursuant to 42 U.S.C. § 1983 against Defendants Maine Department of
Corrections (MDOC), the Commissioner of the MDOC, and seven current or former
employees of the Maine State Prison, alleging that Defendants violated their rights under
the United States Constitution in connection with disciplinary proceedings at the prison.[2]
(Amended Complaint, ECF No. 3.)  Additionally, pursuant to 42 U.S.C. § 1983, Douglas
Burr asserts a claim for retaliation, and Rebbecca Burr asserts a claim for defamation.  The
matter is before the Court on Defendants' motion to dismiss.  (Motion to Dismiss, ECF
No. 14.)

---

[1] Plaintiffs' pleadings refer to Ms. Burr as "Rebbecca" and "Rebecca."  In this Recommended Decision, I
have used the spelling that appears in the caption of Plaintiffs' complaint and, therefore, on the court docket.

[2]  The Maine State Prison defendants consist of former Warden Rodney Bouffard; Warden Mathew A.
Magnusson; Deputy Warden Troy Ross; Lt. Lydia Burnham; Capt. Kenneth Vigue; Capt. Harold Abbott;
and, David Allan.

Following a review of the pleadings and after consideration of the parties' arguments, I recommend that the Court grant in part and deny in part Defendants' motion to dismiss.

## BACKGROUND

The following facts are drawn from Plaintiffs' amended complaint (Am. Complaint, ECF No. 3), as well as "from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Saccoccia v. United States*, 955 F.3d 171, 172 (1st Cir. 2020) (internal quotation marks omitted); *see Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) ("[W]hen a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), then the court can review it upon a motion to dismiss." (quotation marks omitted)); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."). Plaintiff's factual allegations are deemed true when evaluating a motion to dismiss. *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

## A.    June 2014 Disciplinary Action against Douglas Burr

### 1.    Factual Background

Douglas Burr is an inmate at the Maine State Prison. (Am. Complaint ¶ 1.) In June 2014, Defendant Burnham, a lieutenant at the prison, advised "Prison Administration" that she believed Rebecca Burr was dealing and taking payments for drugs that Mr. Burr was trafficking in the prison. (*Id.* ¶¶ 9, 75.) On June 12, 2014, Defendant Ross, Deputy Warden

at the prison, directed that Mr. Burr be removed from the prison's general population and placed on Emergency Observation Status in the prison's Special Management Unit (SMU).[3]  (*Id.* ¶ 17.)  Plaintiffs allege that Defendant Ross' actions in removing Mr. Burr from the general population and placing him in the SMU violated the policies of the MDOC.  (*Id.* ¶ 18.)

Plaintiffs assert that at the request of Defendant Ross on June 12, Corporal Mark Engstfield wrote a disciplinary report, which resulted in Mr. Burr's placement in the SMU. (*Id.* ¶ 19.)  Plaintiffs allege that Corporal Engstfield did not complete the disciplinary report on June 12 and included false information in the report.  (*Id.* ¶¶ 22, 26-27.)  As evidence that the report was not prepared on June 12, Plaintiffs assert that the disciplinary report identified Mr. Burr's housing unit as the unit to which he was assigned on June 17, 2014. (*Id.* ¶¶ 23-24.)   The disciplinary report also stated that it was based on a separate "Confidential Report," although Corporal Engstfield did not obtain the confidential report until June 19, 2014.  (*Id.* ¶ 25.)

Plaintiffs also allege several actions taken by Defendants regarding the disciplinary report and Mr. Burr's placement in the SMU violated MDOC Policy 20.1, entitled "Prisoner Discipline."  (*Id.* ¶¶ 20-22, 28, 30-33; *see* ECF No. 14-6.)  Plaintiffs assert that although MDOC Policy 20.1 requires all disciplinary reports to be delivered to a shift supervisor within 72 hours, Defendant Vigue, the shift supervisor, did not acknowledge the June 12 disciplinary report until June 19, 2014.  (*Id.* ¶¶ 20-21.)  After conducting his

---

[3] Plaintiffs allege that the Special Management Unit is the "euphemistic name for solitary confinement" at the prison.  (Am. Complaint ¶ 17.)

review of the report, Defendant Vigue did not dismiss the report as untimely.  (*Id.* ¶ 33.) According to Plaintiffs, the MDOC's failure to provide Mr. Burr with a copy of the documents placing him on Emergency Observation Status and with notice of the reasons supporting this placement violated Policy 20.1. (*Id.* ¶¶ 29-30.) The disciplinary report was not investigated until eight days after the alleged incident.  (*Id.* ¶ 32.)

On July 14, 2014, a hearing was held regarding the June 12 disciplinary report.  (*Id.* ¶ 35.)  Plaintiffs allege that the hearing violated MDOC Policy 20.1 and Mr. Burr's due process rights.  (*Id.* ¶¶ 35-36, 38.)  Plaintiffs contend that the hearing officer, Defendant Allan, had not been properly trained to conduct the hearing and that he and Defendant Abbott refused to provide Mr. Burr an opportunity to review or contest the evidence against him.  (*Id*. ¶¶ 36-38.)  Defendant Allan found Mr. Burr guilty of a disciplinary infraction. (*Id.* ¶ 39.)  At some point in July 2014, the SMU supervisor recommended that Mr. Burr be released from the SMU, but Defendant Ross and the "Prison Administration" overruled the recommendation.  (*Id.* ¶ 50.)

Mr. Burr appealed from the hearing officer's decision.  (*Id.* ¶ 40.)  On August 8, 2014, Defendant Ross denied the appeal and affirmed the July 14 decision.  (*Id.*  ¶ 41.) Plaintiffs allege that Defendant Ross had a conflict of interest and violated MDOC Policy 20.1 because he was the individual who had originally directed the filing of a disciplinary report.  (*Id.* ¶ 42.)

According to Plaintiffs, by October 2014, Mr. Burr had been in the SMU for 108 days, longer than the 30 days allowed by MDOC Policy 20.1.  (*Id.* ¶¶ 47-48.)  On October 1, 2014, the Maine Attorney General's Office advised Plaintiffs that MDOC would

expunge the record of the disciplinary action against Mr. Burr.  (*Id.* ¶ 48.)  Thereafter, MDOC continued to hold Mr. Burr in the SMU as a "security risk."  (*Id.* ¶ 49.)  In November 2014, the SMU supervisor advised the Prison Administration that he did not believe Mr. Burr was a security risk and that Mr. Burr had completed all available programming in the SMU.  (*Id.* ¶ 51.)  Plaintiffs allege that in February 2016, Defendant Burnham told Mr. Burr that he would not be released from the SMU until he admitted that he had committed the alleged June 12 disciplinary infraction.[4]  (*Id.* ¶ 52.)

### 2.     Administrative Appeal and Complaint in State Court

On September 9, 2014, Mr. Burr filed a complaint in the Maine Superior Court seeking judicial review of the hearing officer's July 14 decision, *see* M.R. Civ. P. 80C, and asserting a claim under 42 USC § 1983 requesting injunctive relief.[5]  (*Id.* ¶ 45; *see* State Complaint, ECF No. 14-2.)  Additionally, Mr. Burr asserted a separate § 1983 claim against Corporal Engstfield, seeking damages for the alleged falsification of the June 12 disciplinary report.  (Am. Complaint ¶ 46; State Complaint at 8.)  As to the Rule 80C appeal, Mr. Burr asked the court to determine that the defendants had "individually and jointly . . . violated the policies and procedures of the [MDOC] and violated [his] constitutional rights," and sought, in part, to be transferred to a different correctional center,

---

[4]  Although not stated in Plaintiffs' amended complaint, the state court record and Plaintiffs' response to Defendants' motion to dismiss show that Mr. Burr left the SMU and returned to the prison's general population in March 2016.  (Judgment at 7, ECF No. 14-1; Order on Sum. Judg. at 11, ECF No. 14-3; Response at 5, ECF No. 15.)

[5]  Mr. Burr's state court complaint named the following parties as defendants: Bouffard, Ross, Engstfield, Vigue, Abbott, Allan, and the Maine Department of Corrections. All individual defendants, except Engstfield, were named in their official capacities.

"have his contact visits re-instated," and have the disciplinary infraction expunged from his record. (State Complaint at 7.)  Mr. Burr, in his claim for injunctive relief, also asked the state court to order the defendants to stop holding him in the SMU, transfer him to a different prison, and award him attorney's fees.  (Am. Complaint ¶ 45; State Complaint at 8.)

In March 2015, the state court denied the defendants' motion to dismiss the Rule 80C appeal and request for injunctive relief, concluding that Mr. Burr could not be held indefinitely in the SMU and that he had alleged facts sufficient to state a claim for injunctive relief pursuant to § 1983.  *See Burr v. Bouffard*, No. AP-14-57, 2015 Me. Super. LEXIS 60 (Mar. 23, 2015).  (*See* Judgment at 2-3, 14, ECF No. 14-1; Order on Sum. Judg. at 3, ECF No. 14-3.)

On May 10, 2016, Mr. Burr filed a joint Rule 80C brief, *see* M.R. Civ. P. 80C(g), and motion for partial summary judgment on his claims for injunctive relief and for damages against Corporal Engstfield. (*See* Judgment at 3; Order on Sum. Judg. at 2.)  He argued that "the disciplinary process pursuant to which he was held in the [SMU] of the Maine State Prison for approximately 20 months violated his due process rights."  (Order on Sum. Judg. at 2, ECF No. 14-3.)  Mr. Burr also argued that "his placement in the SMU was an atypical and significant hardship that was carried out without following the procedures set out in Department regulations," and that MDOC's placement of him "in the SMU for approximately 20 months" was a deprivation of his due process rights.  (*Id.* at 11-12.)

On January 26, 2017, the state court granted in part the Rule 80C appeal; the court reversed the 2014 disciplinary decision and expunged the decision from Mr. Burr's record.[6] (Order on Sum. Judg. at 12, 18.)  In doing so, the court considered the events surrounding the disciplinary review hearing, Mr. Burr's placement in the SMU, and the conditions of his confinement in the SMU.  (*Id.* at 4-11.)   In that same order, the court also entered summary judgment against Mr. Burr on his § 1983 claim against Corporal Engstfield, concluding that "there is no evidence that Cpl. Engstfield was responsible for or contributed to the decision to keep [Mr. Burr] in the SMU for approximately twenty months." (*Id.* at 14, 18.)   As to Mr. Burr's request for injunctive relief pursuant to § 1983, the court requested additional briefing as to whether the claim was moot because, at that point in the proceedings, he had been released from the SMU.[7] (*Id.* 17-18.)  The court also requested clarification as to the injunctive relief Mr. Burr requested.  (*Id.*)

On September 24, 2019, following a two-day trial, the state court entered judgment on Mr. Burr's remaining claims.  (Judgment at 2, 18-19.)  The court "conclude[d] that the review process provided" to Mr. Burr in the wake of the June 12 disciplinary report and his placement in the SMU "fell below the constitutional standard."  (*Id.* at 15, 18-19.)  The court determined that Mr. Burr's due process rights were violated because, in part, there was no "meaningful" review of his status in the SMU, he could not know "what it was he . . . had to do to leave the highly restrictive confinement imposed on him," and

---

[6]  The state court denied Mr. Burr's request to be transferred to a different correctional center.  (Order on Sum. Judg. at 13, 18.)

[7]  In July 2017, the state court concluded that "the mootness exception for questions of great public concern applied" to Mr. Burr's claim for injunctive relief.  (Judgment at 3-4.)

"decision-makers" could not agree on "what exactly he had done to justify his separation from general population for such an extended time." (*Id.* at 14-15.) The court then considered "whether the Plaintiff is entitled to the equitable relief he seeks," and concluded that, under Maine law, Mr. Burr was not entitled to injunctive relief. (*Id.* at 15, 17-19.) Mr. Burr appealed from the court's decision.[8]

On November 5, 2020, after Plaintiffs filed their complaint in this matter, the Maine Law Court vacated in part the Superior Court's decision. *See Burr v. Dep't of Corr.*, 2020 ME 130, 240 A.3d 371. The Law Court vacated "the portions of the court's judgment denying injunctive relief, restoring good-time credit for the period of Burr's nondisciplinary segregation pursuant to his Rule 80C petition, and entering judgment for the defendants on the § 1983 claim." *Id.* at ¶ 35. In doing so, the Law Court remanded "for the court to (1) determine whether injunctive relief should be awarded; (2) enter judgment in Burr's favor on his § 1983 claim; (3) order, as a remedy for the constitutional violations alleged in his § 1983 claim, the restoration of good-time credit for the period of Burr's nondisciplinary segregation; and (4) consider awarding attorney fees pursuant to [42 U.S.C.] § 1988."[9] *Id.*

The record does not reflect any action to date by the Maine Superior Court on remand.

---

[8] Prior to his appeal, Mr. Burr had "moved for additional findings of fact and to alter or amend the judgment, requesting judgment in his favor on the § 1983 claim, an award of attorney fees on that claim, and the restoration of good-time credit for the period of his nondisciplinary segregation." *See Burr v. Dep't of Corr.*, 2020 ME 130, ¶ 15, 240 A.3d 371. The state trial court ordered the restoration of Mr. Burr's good-time credit for the time he spent in the SMU but concluded that it could not award attorney fees on his section 1983 claim for injunctive relief. *Id.*

[9] Mr. Burr did not appeal from the entry of summary judgment on the § 1983 claim against Corporal Engstfeld. *See Burr v. Dep't of Corr.*, 2020 ME 130, ¶ 7 n.3, 240 A.3d 371.

**B.      December 2019 Disciplinary Action Against Douglas Burr**

In December 2019, Douglas participated in a contact visit with Rebbecca in the prison's visitation room.  (*Id.* ¶ 63.)  The visit occurred after Mr. Burr had "just filed" his appeal from the Superior Court's September 2019 decision declining to grant him injunctive relief under § 1983.  (*Id.* ¶ 64.)  Prison officials claimed that during the visit Mr. Burr gave Ms. Burr something that she had allegedly put in her mouth.  (*Id.* ¶ 65.)  Prison officials maintained that the episode was recorded on video; they charged Mr. Burr with a disciplinary infraction.  (*Id.* ¶ 66.)  The "Prison Administration" banned Ms. Burr from any visits with Mr. Burr and ordered that Mr. Burr's other visits be "non-contact (through glass) visits."  (*Id.* ¶ 67.)  Thereafter, Mr. Burr's counsel arrived at the prison and was refused a contact visit.  (*Id.* ¶ 69.)

Mr. Burr filed a grievance regarding the alleged disciplinary infraction.  (*Id.* ¶ 70.)  A hearing was held before the disciplinary board, and Mr. Burr was found not guilty of two alleged infractions related to the December 2019 visit.  (*Id.*)  Mr. Burr asked to review the recording of the incident that led to the termination of his visits with his wife, but the request was denied.  (*Id.*)  Following the hearing, the Prison Administration continued to ban Ms. Burr from the prison and required all Mr. Burr's visits to be non-contact.  (*Id.* ¶¶ 71, 86.)

## DISCUSSION

Pursuant to 42 U.S.C. § 1983, Plaintiffs assert Defendants' violated their due process rights.  (Am. Complaint, Counts I, IV.)  Additionally, Mr. Burr alleges a claim of retaliation and Ms. Burr alleges a claim of defamation.  (*Id.* Counts II, III.)  Defendants

argue that Mr. Burr's § 1983 claim is barred by claim preclusion and issue preclusion. (Motion to Dismiss at 8-12.)  Defendants also contend that Plaintiffs failed to assert any actionable claims.  (*Id.* at 12-20.)

## A.     Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In doing so, a court "assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom."  *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)).  The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'"  *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

**B.      Claims against MDOC and Commissioner Randall Liberty**

Defendants contend that MDOC and Defendant Randall Liberty, the Commissioner who is sued only in his official capacity, are not "persons" within the meaning of 42 U.S.C. § 1983 and, therefore, the claims against them should be dismissed.   (Motion at 7.) Although Plaintiffs agree that the MDOC defendants are not "subject to a damages claim," Plaintiffs argue that the MDOC defendants are "subject to a claim for injunctive relief"— namely, that the MDOC be prohibited from denying visitation rights to Plaintiffs. (Response at 19, ECF No. 15.)

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of 'any rights, privileges, or immunities secured by the Constitution and [federal] laws.'"   *Gray v. Cummings*, 917 F.3d 1, 7 (1st Cr. 2019) (alteration in original) (quoting 42 U.S.C. § 1983).   Section 1983 does not permit claims for monetary damages against the state or its agencies.   *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983"); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity.")   However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *see Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71-72 (1st Cir. 2002).

Plaintiffs have asserted claims against MDOC and Defendant Liberty in his official capacity. (Am. Complaint ¶¶ 10-11.)   To the extent Plaintiffs' amended complaint is construed to seek monetary damages against MDOC and Defendant Liberty, therefore, Plaintiffs' claim fails. *Nieves-Marquez*, 353 F.3d at 124.

The Local Rules of the District of Maine require that "[i]f a pleading or motion seeks injunctive relief, in addition to the prayer for such relief, the words "INJUNCTIVE RELIEF SOUGHT" or the equivalent shall be included on the first page."  D. Me. Local Rule 9(b).  In their amended complaint, Plaintiffs assert "INJUNCTIVE RELIEF SOUGHT." (Am. Complaint at 1.)  While Plaintiffs did not identify the specific injunctive relief requested in their prayer for relief, in their response to the motion to dismiss, they ask the Court to prohibit the MDOC defendants from denying Plaintiffs their visitations. (Response at 19.)

Under notice pleading, which governs civil rights claims, a plaintiff must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004)).  The MDOC defendants' decision to prohibit contact visits between the plaintiffs is a principal focus of Plaintiffs' amended complaint.  Given the focus of Plaintiffs' amended complaint and Plaintiffs' request for injunctive relief, the MDOC defendants cannot reasonably argue that they are not on notice that Plaintiffs seek to lift the prohibition on contact visits.  To dismiss the MDOC defendants because Plaintiffs did not, in their prayer for relief, explicitly ask the Court to lift the prohibition on contact visits would unreasonably promote form over

substance.  To the extent, therefore, that Plaintiffs otherwise state an actionable claim for relief based on the denial of contact visits, Plaintiffs have asserted an official capacity claim.

## C.      Plaintiff Douglas Burr's Due Process Claim

Mr. Burr asserts a § 1983 due process claim against Defendants Bouffard, Ross, Vigue, Abbott, and Allan, based on Mr. Burr's placement in the SMU for 19 months.  (Am. Complaint ¶¶ 43, 59, 60.)  Defendants contend that Mr. Burr's due process claim "is an attempt to relitigate the Section 1983 claim that went to trial in Mr. Burr's state court case," and that his present claim is barred by claim preclusion and issue preclusion.  (Motion at 8.)

When claim preclusion or issue preclusion is raised, "federal courts must give preclusive effect to a state-court judgment if the state court itself would."  *Newman v. Krintzman*, 723 F.3d 308, 310 (1st Cir. 2013) (citing 28 U.S.C. § 1738).  A court, therefore, "must accept that state's rules for deciding the effect of the judgment."  *Id.*; *see Miller v. Nichols*, 586 F.3d 53, 60 (1st Cir. 2009) ("It is well settled that state court decisions have the same preclusive effect in federal courts that they would have in the state where the judgment was issued." (citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996)).  Maine law thus governs whether Mr. Burr's due process claim is precluded by the state court judgment.

### 1.      Claim Preclusion

Under Maine law, "[t]he doctrine of res judicata prevents the relitigation of matters already decided" and "consists of two components: issue preclusion and claim preclusion."

*Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097. "Claim

preclusion prevents a party from bringing any claim in a subsequent action that could have

been brought in the original action." *Sebra v. Wentworth*, 2010 ME 21, ¶ 11, 990 A.2d

538. Claim preclusion operates to bar a claim when

> (1) the same parties or their privies are involved in both actions; (2) a valid
> final judgment was entered in the prior action; and (3) the matters presented
> for decision in the second action were, or might have been litigated in the
> first action.

*Id.* (quotation marks omitted). "[T]he party asserting the affirmative defense of res

judicata[] bears the burden of proving its applicability." *Ring v. Leighton*, 2019 ME 8, ¶ 7,

200 A.3d 259. "[T]he failure to prove any individual prong means that [a] second litigation

is not barred." *Doe v. Forino*, 2020 ME 135, ¶ 8, --- A.3d ---.

"To determine whether the matters presented for decision in the [second] action

were or might have been litigated in the prior action, [Maine courts] examine whether the

same cause of action was before the court in the prior case." *Wilmington Trust Co. v.

Sullivan-Thorne*, 2013 ME 94, ¶ 8, 81 A.3d 371 (quotation marks omitted). Maine law

"define[s] the parameters of the phrase 'cause of action' by applying a transactional test,

which examines the aggregate of connected operative facts that can be handled together

conveniently for purposes of trial to determine if they were founded upon the same

transaction, arose out of the same nucleus of operative facts, and sought redress for

essentially the same basic wrong." *Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 21, 175

A.3d 103 (quotation marks omitted). "A plaintiff may not split a cause of action and

prosecute each of its parts in separate lawsuits." *Camps Newfound/Owatonna Corp. v.*

*Town of Harrison*, 1998 ME 20, ¶ 12, 705 A.2d 1109.  "Claim preclusion may apply even where a suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case."  *Wilmington Trust*, 2013 ME 94, ¶ 8, 81 A.3d 371 (quotation marks omitted).

"[I]n determining who are the 'parties' who will be bound by a prior judgment, [Maine courts] look beyond the nominal parties of record to the real parties in interest." *Arsenault v. Carrier*, 390 A.2d 1048, 1050 (Me. 1978).  "A party includes all persons who, though not nominally parties, but being directly interested in the subject-matter, have a right to make a defense, or to control the proceedings, and to appeal from the judgment of the court, which right also includes the right to adduce testimony and cross-examine witnesses offered by the other side."  *Northeast Harbor Golf Club v. Town of Mount Desert*, 618 A.2d 225, 227 (Me. 1992) (quotation marks omitted).  "[A]n action brought against an individual in one capacity does not bar a later action brought against the same individual in a different capacity."  *Roy v. Augusta*, 712 F.2d 1517, 1522 (1st Cir. 1983) (applying Maine law); *cf. Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013).  Privity, on the other hand, "exists when two parties have a commonality of ownership, control, and interest in a proceeding."  *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 20, 989 A.2d 733; *see Northeast Harbor Golf Club*, 618 A.2d at 227 ("[S]ubstance over form controls the inquiry into whether privity will be found.")

Defendants argue that a final judgment has been, "or soon will be," entered in the state court proceedings, and that Mr. Burr has asserted "what is functionally the same

claim" as the state court claim with the same parties. (Motion at 8-10.)  Plaintiffs contend

Mr. Burr's claim involves events that occurred after he filed his September 2014 complaint

in state court and that "he did not" and "could not" have known at that time that he would

continue to be held in the SMU for a total of twenty months.  (Response at 7-8.)  Further,

Plaintiffs maintain that Defendants are not identical to the parties in state court because, in

the state court, Mr. Burr asserted claims against the defendants only in their official

capacities.  (Response at 8-9.)

Although some of Plaintiffs' claim in this matter "arose out of the same nucleus of

operative facts" as the claims before the state court, *Pushard*, 2017 ME 230, ¶ 21, 175 A.3d

103 (quotation marks omitted), and "were, or might have been litigated in [that] action,"

*Sebra*, 2010 ME 21, ¶ 11, 990 A.2d 538, the same *parties* were not involved in the state

court litigation.  The claims in the state court action based on the June 2014 events were

asserted against each defendant in their official capacity. (State Complaint at 3.)  In this

matter, Plaintiffs assert claims against many of the same defendants in their individual

capacities.[10]  (Am. Complaint at 1-3.)  As such, the change in the capacity in which the

defendants are being sued does not meet the requirement under Maine law that the same

parties be involved in both actions.  *See Roy*, 712 F.2d at 1522; *Northeast Harbor Golf*

*Club*, 618 A.2d at 227.

---

[10] The allegations in Plaintiffs' amended complaint suggest some ambiguity as to the capacity in which the claims against Defendant Allan are asserted.  The caption of the complaint states that Allan is being sued in his individual capacity, but the allegations in the complaint state that he is being sued in his "official capacity." (Am. Complaint at 1, ¶ 8.)  A reasonable review of the complaint reveals that Defendant Allan is being sued in his individual capacity.  *See Indianapolis Life Ins. Co. v. Herman*, 516 F.3d 5, 10 (1st Cir. 2008) ("[I]n federal cases the court examines the substance of the complaint and the parties' litigation conduct to determine the capacity in which a defendant was sued.")

Furthermore, Plaintiffs' claims based on Defendants' 2019 decision to prohibit Plaintiffs' contact visits had not occurred and thus were not known to Plaintiffs at the time they commenced the state court action. The § 1983 claims based on the 2019 decision, therefore, are not barred by claim preclusion. *See Darney v. Dragon Products Co., LLC*, 592 F. Supp. 2d 180, 184 (D. Me. 2009) (claims arising after the prior action are generally not barred by res judicata).

### 2.     Issue preclusion

Issue preclusion, or collateral estoppel, "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (quotation marks omitted). Additionally, "a party asserting nonmutual collateral estoppel—where the parties are not the same parties or privies to the prior proceeding— must establish that the party to be estopped was a party or in privity with a party in the prior proceeding." *Beal* , 2010 ME 20, ¶ 18, 989 A.2d 733. "Whereas claim preclusion is focused on the claims set forth in the prior proceeding, collateral estoppel concerns factual issues, and applies even when the two proceedings offer different types of remedies." *Portland Water Dist.*, 2008 ME 23, ¶ 9, 940 A.2d 1097 (citation omitted). A judgment is final when "(1) the trial court's action fully decides and disposes of the whole matter leaving nothing further for the consideration and judgment of the trial court; and (2) no subsequent proceedings in the case will render the appellate court's decision immaterial." *Gunning v. Doe*, 2017 ME 78, ¶ 11, 159 A.3d 1227 (quotation marks omitted); *see Bartlett*

*v. Pullen*, 586 A.2d 1263, 1265 (Me. 1991) ("The general rule is that a judgment is final for purposes of res judicata despite the pendency of an appeal." (citing *Restatement (Second) of Judgments*, § 13 comment f (1982)). "A party has a *fair opportunity* to litigate an issue if that party either controls the litigation, substantially participates in that litigation, or could have participated in the litigation had they chosen to do so." *State v. Hughes*, 2004 ME 141, ¶ 5, 863 A.32d 266 (emphasis in original). "A party asserting collateral estoppel has the burden of demonstrating that the specific issue was actually decided in the earlier proceeding." *Macomber*, 2003 ME 121, ¶ 25, 834 A.2d 131.

To establish that issue preclusion bars or limits Mr. Burr's claim, Defendants must show that an identical factual issue was determined by a prior final judgment, *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d 131, that Mr. Burr "had a fair opportunity and incentive to litigate the issue in a prior proceeding," *id.*, and that he was "a party or in privity with a party in the prior proceeding," *Beal*, 2010 ME 20, ¶ 18, 989 A.2d 733.

Mr. Burr was a party to the prior proceeding. In addition, the factual issue Plaintiffs ask the Court to decide in this case—that the extended placement of Mr. Burr in SMU constitutes a violation of his due process rights—is identical to the factual issue decided by the state trial court. (*See* Order on Sum. Judg. at 12, 18; Judgment at 18.). After review of Mr. Burr's May 2016 Rule 80C brief and motion for summary judgment, including his argument that "the disciplinary process pursuant to which he was held in the [SMU] of the Maine State Prison for approximately 20 months violated his due process rights" (Order on Sum. Judg.), the state court found that "[MDOC] failed to follow all of the necessary disciplinary procedures set out in [MDOC] Policy 20.1." (*Id* at 12.) The court also

concluded that "there is no evidence that Cpl. Engstfield was responsible for or contributed to the decision to keep Mr. Burr in the SMU for approximately twenty months." (*Id.* at 14, 18.)  The state court again concluded in its September 2019 judgment that "the review process provided" to Mr. Burr following the June 12 disciplinary report and his placement in the SMU "fell below the constitutional standard."  (Judgment at 15, 18-19.)  Moreover, Mr. Burr had "a fair opportunity and incentive to litigate the issue in a prior proceeding," *Macomber*, 2003 ME 121, ¶ 22, and, in fact, did argue the same issues before the state court.[11]  (*See* Order on Sum. Judg. at 2, 18; Judgment at 18.).

The state court determined the scope of Mr. Burr's due process claim based on the June 2014 events and the length of time he was in segregation.  The state court found that Mr. Burr was not afforded a meaningful review of his segregation status.  In this Court, therefore, Mr. Burr's claim based on the 2014 events against Defendants in their individual capacities is limited to a claim for damages resulting from the violation found by the state court.  Mr. Burr's claim based on the 2019 events is not so limited.

**D.**     **Plaintiff Douglas Burr's Retaliation Claim**

Mr. Burr asserts a § 1983 retaliation claim for retaliation, citing Defendants' disciplinary proceedings against him following his appeal from the Superior Court's September 2019 judgment.  (Am. Complaint ¶¶ 62-73.)  Defendants argue that Mr. Burr's

---

[11] Mr. Burr had the opportunity to include an "independent action," *see* M.R. Civ. P. 80C(i), with his Rule 80C appeal and assert claims for damages against the defendants in the state court, but he did so only against Corporal Engstfield.  *See Fleming v. Comm'r, Dep't of Corrections*, 2002 ME 74, ¶ 9, 795 A.2d 692 ("Rule 80C anticipates that a plaintiff (or petitioner) may add an independent claim for damages, and the rule provides a procedure for handling that independent claim." (citing M.R. Civ. P. 80C(i))).

claim should be dismissed because he has not alleged a "sufficient causal link" between his protected action and the alleged retaliatory conduct and because any alleged retaliatory conduct was not "adverse" given that Mr. Burr has continued to litigate his appeal and his claims in this matter.

"When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to § 1983." *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141 (1st Cir. 2016); *see Lebaron v. Spencer*, 527 F. App'x 25, 32 (1st Cir. 2013) (per curiam). "To prevail on a First Amendment retaliation claim, a prisoner must show that he engaged in protected activity, that defendants took an adverse action against him that would deter a prisoner of ordinary firmness from continuing to engage in that conduct, and that there is a causal link between the protected activity and the adverse action." *Turner v. Wall*, No. 18-1869, 2020 U.S. App. LEXIS 30047, at *3 (1st Cir. May 5, 2020) (citing *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *see Pope v. Bernard*, No. 10-1443, 2011 U.S. App. LEXIS 2764, at *4 (1st Cir. Feb. 10, 2011) (per curiam) (recognizing that an adverse action must be "more than de minimis"). "Adverse acts will be considered de minimis when they cause an inmate only a few days of discomfort, impose a [single] minor sanction, or impose an otherwise constitutional restriction on the inmate." *Williams v. Cutler*, No. 1:14-cv-539-NT, 2016 U.S. Dist. LEXIS 156194, at *6 (D. Me. Nov. 10, 2016) (alteration in original) (quotation marks omitted). To demonstrate a "causal link," a plaintiff "must show that his protected activity was a substantial or motivating factor for

the adverse action." *Staples v. Gerry*, 923 F.3d 7, 15 (1st Cir. 2019) (alteration and quotation marks omitted).

Mr. Burr's appeal from the state court's judgment constitutes protected conduct under the First Amendment. *See Hannon*, 645 F.3d at 48 ("The plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity.")  Plaintiffs allege that after the appeal was filed in September 2019, in December 2019, Defendants initiated baseless disciplinary proceedings and barred Plaintiffs from further contact visits.

Plaintiffs evidently rely on the temporal relationship between the filing of the appeal in September 2019 and the disciplinary action following their visit in December 2019. Given the parties' history as alleged in the amended complaint, the approximate three-month period could plausibly support a prima facie causation argument.  *See Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980). ("[A]n inference of retaliation is warranted from the chronology of events recited, and from the allegation that appellant's first suit complains of prison conditions and is directed at prison officials." (citing *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)); *see also Sanchez–Rodriguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (holding in employment context that approximately three-month period between protected activity and adverse action was "close enough to suggest causation" for purposes of a prima facie claim); *but see King v. Town of Hanover*, 116 F.3d 965, 968 (1st Cir. 1997) (holding that approximately five-month period between protected activity and adverse action did not support an inference of causation for purposes of a prima facie claim without some additional evidence of retaliatory purpose).  Mr. Burr, therefore, has asserted a plausible retaliation claim.

### E.      Plaintiff Rebbecca Burr's Due Process Claim

Ms. Burr asserts that she has a "constitutionally protected interest" in visiting her husband in prison and that Defendants' continued refusal to allow her such visits since December 2019 is a violation of her due process rights. (Am. Complaint ¶¶ 85-87.)  She alleges that Defendants' refusal to allow her to visit her husband is "arbitrary and capricious" as Mr. Burr was found not guilty of a disciplinary infraction. (*Id*. ¶ 86.)  She contends that the MDOC "created a liberty interest in visitation" in accordance with MDOC Policy 21.4.[12]  (Response at 16; *see* Am. Complaint ¶¶ 84-85.)  Defendants argue that Ms. Burr does not have an "unfettered constitutional right to visitation," that visitation restrictions can be imposed when they serve "penological interests," and that MDOC policy permits such restrictions.  (Motion at 14-16.)

"[T]o prevail on a § 1983 claim, a plaintiff must demonstrate: (i) that the conduct complained of has been committed under color of state law, and (ii) that the alleged conduct worked a denial of rights secured by the Constitution or laws of the United States." *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014) (quotation marks omitted).  In the context of prison conditions, "[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  In particular, "a liberty interest in avoiding particular conditions of

---

[12]  MDOC Policy 21.4 states: "It is the policy of the Department of Corrections to permit prisoners to have visits with family, friends, and professional visitors under conditions that are consistent with safety, security, and orderly management of the facility."  (Am. Complaint ¶ 84; Response at 16.)

confinement may arise from state policies or regulations, subject to . . . important limitations." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). In *Sandin*, the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," but held that "these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84 (citations omitted).

As to visitors to a prison, however, "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (internal citation and quotation marks omitted); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that when a prison regulation "impinges" constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests"); *Cremeans v. Wrenn*, No. 17-cv-572-SM, 2019 U.S. Dist. LEXIS 52530, **19-20 (D. N.H. Mar 28, 2019) (citing cases upholding restrictions of familial visitation at prisons); *Dewitt v. Wall*, No. 01-65T, 2001 U.S. Dist. LEXIS 15768, *17 (D. R.I. Jul. 31, 2001) (concluding that a *prisoner's* "inability to receive visitors is not atypical and unusually harsh compared to the ordinary

circumstances contemplated by a prison sentence").[13]   Ms. Burr thus does not have a separate claim for the denial of contact visits. [14]

## F.   Plaintiff Rebbecca Burr's Defamation Claim

Ms. Burr asserts a § 1983 defamation claim against Defendant Burnham based on Defendant Burnham's report to "Prison Administration" in June 2014 that Ms. Burr "was dealing drugs and taking payments for drugs" Mr. Burr trafficked in the prison, and her instruction to Ms. Burr's employer not to have Ms. Burr serve food to Defendant Burnham.[15]  (Am. Complaint ¶¶ 75, 77.)   Defendants contend that Plaintiffs have not alleged facts showing that the statements harmed Ms. Burr's reputation and have not demonstrated how she was otherwise deprived of a constitutional right.  (Motion at 19-20.) Plaintiffs argue that Defendants' statements and the later refusal to allow Ms. Burr to visit with her husband adequately state a claim for defamation.  (Response at 18-19.)

"[D]efamation, even from the lips of a government actor, does not in and of itself transgress constitutionally assured rights."  *Pendleton v. City of Haverhill*, 156 F.3d 57, 62-63 (1st Cir. 1998) (citing *Paul v. Davis*, 424 U.S. 693, 700-01 (1976)).  Rather, "when a person alleges that she has suffered stigmatization at the hands of a government actor,

---

[13] Ms. Burr alleges that MDOC Policy 21.4 created a liberty interest in her right to visit her husband in prison.  The language in the Policy, as alleged in Plaintiffs' amended complaint, however, gives discretion to the MDOC to limit visitation "under conditions that are consistent with safety, security, and orderly management of the facility."  (Am. Complaint ¶ 84.)

[14]  Because Ms. Burr does not have a protected interest in visitations, I have not addressed Defendants' qualified immunity argument.  (Motion at 16, n.6.)

[15]  Although Plaintiffs also allege that other false statements were made about Ms. Burr by the "Prison Administration[]," the complaint does not allege what these statements entailed, when they made, or who made them.  (Am. Complaint ¶ 80.)

she must show an adverse effect on some interest 'more tangible' than reputational harm." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 9 (1st Cir. 2011) (quoting *Paul*, 424 U.S. at 701). Thus, for such a "stigma-plus" claim, an alleged "reputational injury must be accompanied by a change in the injured person's status or rights under substantive state or federal law." *Mead v. Independence Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012) (quotation marks omitted). A plaintiff must also demonstrate "that the change in rights or status be directly attributable to the challenged governmental action." *URI*, 631 F.3d at 10. "Where the stigma and the incremental harm . . . derive from distinct sources, a party cannot make out a viable procedural due process claim . . . even if both sources are government entities." *Id.* (citation omitted).

Ms. Burr alleges two statements made by Defendant Burnham support her defamation claim. First, she alleges that Defendant Burnham advised Prison Administration in June 2014 that she believed Ms. Burr was dealing drugs and taking payments for drugs which Mr. Burr was trafficking in prison. (Complaint ¶ 75.) Second, Plaintiffs allege that in December 2016, Defendant Burnham told Ms. Burr's employers Ms. Burr could not serve food to her. (*Id.* ¶ 77.)

As an initial matter, the Court must consider whether the alleged statements by Defendant Burnham are actionable under the applicable statute of limitations. "Because section 1983 does not have its own statute of limitations . . . courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred." *Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016). However, "[c]ourts use federal law . . . to figure out when the limitation clock starts ticking." *Id.* Under Maine law, a claim

for defamation "shall be commenced within 2 years after the cause of action accrues." 14 M.R.S. § 753; *see Tanguay v. Asen*, 1998 ME 277, ¶ 7, 722 A.2d 49. "Under federal law, a § 1983 claim accrues when the putative plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020) (quotation marks omitted).

Here, the alleged defamatory statements were made in June 2014 and December 2016. Because even the most recent of the statements was made three years before the alleged constitutional harm to Ms. Burr and nearly three and a half years before the filing of Plaintiffs' complaint, the statute of limitations for defamation under Maine law had run at the time of the alleged "change in [Ms. Burr's] status or rights under substantive state or federal law." *Mead*, 684 F.3d at 233. In short, Plaintiff cannot proceed on a defamation claim based on the alleged statements.

Even if the statements were within the statute of limitations, Plaintiffs have not alleged facts showing that any change in Ms. Burr's "rights or status" were "directly attributable" to the alleged defamatory statements. *URI*, 631 F.3d at 10. To the contrary, given that Plaintiffs allege that the restrictions on visitation arising in December 2019 were attributable to the filing of Mr. Burr's appeal in state court and an alleged disciplinary infraction, the alleged "stigma and the incremental harm" to Ms. Burr "derive[d] from distinct sources." *Id.*; *see Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015).

In sum, Ms. Burr has failed to allege facts sufficient to state an actionable defamation claim.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part and deny in part Defendants' motion to dismiss. I recommend that the Court grant Defendants' motion as to Plaintiff Rebbecca Burr's § 1983 claim based on the denial of contact visits, as to Plaintiff Rebbecca Burr's defamation claim, as to Plaintiff Douglas Burr's claim for injunctive relief based on the events of June 2014, and as to Plaintiff Douglas Burr's claim for damages based on the events of June 2014, except for damages related to Defendants' failure to afford Plaintiff Douglas Burr a meaningful review of his segregation status. I recommend the Court otherwise deny Defendants' motion.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of January, 2021.